Case number 22-5253, Concert Investor, LLC Appellant v. Small Business Administration and Isabella Casillas Guzman, Administrator, Small Business Administration. Mr. Tice for the appellant and Mr. Silverman for the appellees. Good morning, Mr. Tice. You may proceed when you're ready. Thank you. May it please the court, through the Save Our Stages Act, Congress offered vital aid to small businesses in the concert industry that were devastated by the pandemic. Through a series of errors, the SBA wrongly denied that aid to concert investors. It easily qualifies as an eligible live performing arts organization operator. An entity is eligible as long as one of its principal business activities is to produce, organize, or manage live concerts. That describes my client to a T, shown by extensive record evidence reflecting accepted industry usage. Concert Investor is a full service production agency, significant organizational and managerial tour oversight. Among other things, it advances extensive financing for tours, organizes and manages the tour budgets, hires, pays, and ensures the tour staff, contracts with the artists themselves, promoters. It pays the bills for dozens of tour service providers. We do things like stage managing, power, lighting, sound, rigging, transportation, special effects, and much, much more. In short, it puts it all together for its tours. Beside Concert Investor, every other firm on the Twenty One Pilots tour discussed in the briefs was a subcontractor. Based with all that overwhelming evidence, the government was forced to shift gears in litigation and offered for the first time its unduly stringent, ultimate control over all aspects definition. If that were correct, no entity at all would ever be considered a producer because different entities routinely divide ultimate control over different parts of concerts, such as ticketing and marketing. Let's start with why you went from theatrical producer to live performing arts organization operator, and then part two of that question is the term produce, according to the statute, would fit both of those categories anyway, right? Well, I'll take both. First is that the entity, when it was not represented by council, submitted an application, thought that that was the category that might describe it the best. The agency's own regulations suggested, though, that once you've submitted an application, you can feel free to change it to abide better by the... Number two, I don't think it's the same definition for a theatrical producer and for a live performing arts organization operator. No, I'm not saying it's the same definition. I'm saying the term produce is within both, if you look at the statute. You're right, Your Honor. It is in both, but I do think that agency itself treated those two terms differently. If you look at their frequently asked questions, I believe it's page 735, I believe is the relevant one. It defines theatrical producer separately from performing arts organization operator, so it suggested that the roles that the entity would play in those two contexts are different. That's what the agency's view was, and we agreed to. It seems that Congress intended to provide broad relief to a large category of industry players that, to be sure, those with organizational and managerial and production roles, but still a broad category. And it wanted those definitions, as both my client and the government agree, to be interpreted using the accepted industry definition. I do think there are some relevant differences between the theatrical industry, the concert industry, the movie and film industries, and other sort of production. How do we get to what you say they're looking at as all aspects of production, but then how would you more narrowly define it? Again, using the category of produce because the or host live concerts, etc., etc., which suggests that each one of those terms could be sufficient to qualify you. That's right, Your Honor. I think they're all independent, but I also think that ordinarily in statutory construction context like this, you'd look at them, they can to some extent inform neighboring words. So, for example, it might not be the case that anybody who could said to be produce a very small discrete aspect of the show would be equivalent to someone who manages or organizes it. So I think a word is known by the company it keeps, produces here, suggests that same sort of managerial or supervisory role. But I think the all aspects definition just goes way too far. It just makes no sense in the way that concerts are actually put on. So the main thing you've identified, you sort of have two buckets of that is in conflict with the statute, but then you also have to deal with the factual determinations and you say that they're unsupported or arbitrary. On the first question about the legal, the challenge you make is that is to the all aspects that have to ultimate control over all aspects. It is, Your Honor. We don't we just don't think that's supportable. We don't think it makes sense on its own terms. I can get into that if you like, but it's primarily to the all we would define it as something more like, again, we think it was the entities, excuse me, SBA's job to define in the first instance. But putting that aside, if we were to define it to be something like the entity or entities with organization or managerial control over many significant aspects of a show based on industry understanding. Flexible definition, it's a functional definition. That's actually the way it is used in the concert industry. It's all aspects of the problem. Right. So it's the all aspects. But they also, as I read, the SBA determined that concert investors was only responsible for lighting. So there's sort of the definitional side, but also even under a definition that would allow more than one or wouldn't have to be all aspects. So do you have to also win a challenge to the reading of the record in order to prevail? Well, I think we do need to show your honor that we're not just a mere service provider, but I think it's really important what it means to be just a mere service provider. We accept that person who is actually hired by concert investor to install the rigging or the person hired by concert investor to perform the stage managing function. Those are service providers. Those are providing services to eligible producers, artists, promoters, et cetera. Those who might be eligible in statute otherwise. What we do contest with and what we think the record is overwhelmingly clear on is that that is not what concert investor does. It plays that organizational supervisory role over the concert tours themselves. It is the one that's organizing the tour budget. It is the one that's paying all the invoices for everyone on the show. It's paying the lighting installer. It's paying. I mean, we have a list of invoices on pages 13 and 14 of our brief. It's things like stage managing, graphic design, staging, power generation distribution, audio package, LED package, lighting package, screen media server package. I could go on and on, video crew and equipment, special effects, lasers, smoke generators, et cetera. It would make no sense for us to be a service provider that would then be paying the invoices for all the other service providers on the tour. As I said before, other than concert investor, every other entity was a subcontractor. Is the record sufficient for us to confidently conclude that every other entity was a subcontractor? There are entities mentioned in those invoices that are subcontractors of concert investors, but we don't actually know whether there was some financial guru in some other activities, whether there was some music investors entity that was side-by-side that could produce a similar record that looks exhaustive. What would we look to in the record that would help us exclude the unknowns? Understood, Your Honor. It's a good question, but I do think there's lots in this record that actually does show that. I think, again, going back to industry usage, I think that's sort of a critical component of this. I think the government agrees that industry usage is important, but they find industry usage from dictionary definitions where we've pointed to things that show how the industry used those terms. To answer your question, things like the magazine that described us as a production agency or said that the articles seemed to describe you and then some other individuals in the name with somebody that was in charge of the concert investor supervision. Well, concert investor was not only a technical producer in the sense it was paying everyone's salaries and it was hiring the tour staff and it was transporting the equipment from one continent to another. It was also in charge of a lot of the creative elements, too. Frankly, I think that's where a lot of this confusion came in because concert investor does so much for the show. It doesn't just oversee at a very high level the budget. It also does things like get his hands dirty and programs lighting and sound cues. It confused the agency to think that's all it was doing. That's not the case. So, there are two magazine articles. One of them is... You don't have handy the... I have the sites handy. One was 671 and the other is at 658. Fortunately, one of them, it's just a link to the actual article. I would encourage you on page... I believe that's the 671. I'll double check. I believe that's the 671. But I encourage you to go to that, too, because you could read the whole article. There's an excerpt of the best paragraph, I think, that says putting it all together and really shows what our client does. But if you go to the actual article itself, there's a link to it in footnote five, I believe, of our opening brief. If you turn to page 41, there's actually an advertisement for a concert investor that says, full service production agency. And it shows all the things concert investor does. But the article that is reproduced, that's the one that treats it as here are the sound people and there are the lighting people. And I just was interested in how... And I think that's the way the SBA understood it. And I'm wondering what your pushback is on that. That's the article. Here's two different places in the JA. Well, these are magazines called things like production, lighting, lights, and staging news. So, it's not surprising to us that they focus on the sort of light and sound intensive. But what I took to be saying, and maybe this is wrong, is that they're attributing the lighting not to concert investors, but to somebody else. Lighting is absolutely attributed to concert investor. I think later on in the article, they talk about another person in the sound engineering role. I'm sorry, I missed that. That person was not associated with concert investor or not, excuse me, that person is not a member of concert. That person was paid by concert. Okay. That person was like a subcontractor. That's right. If you look at... Well, I think there's... It's outside of the record, unfortunately, gets a little bit complicated. I think for the first half of the tour concert, the artist used its existing sound engineer halfway through that person left and the concert investor hired the sound engineer. Again, it goes to show that sound engineer is the service. That's the contractor providing services to the eligible entities like the producer. Early on in the tour, SDA is relying on the dictionary definition. But if you use the term produced from the dictionary definition, it could mean different things depending on your role, like if you're in film, if you're in a play, if you're in a concert. Okay. So we're not... When we say all aspects of production, that's even further defined by the particular role. I think that's right, Your Honor. And I think our main point there is because it's a flexible definition, and that's what even some of the government's sites such as the Berklee Music Citation suggests. It's a flexible one. It's going to depend concert to concert. That's why it's important to look at the industry usage. And also, frankly, why the all aspects definition makes no sense because in that case, there would almost never be a producer because there's also always an artist who has control over creative aspects and writes the songs and does other important things. There's a venue that actually hosts the concerts that do things like concessions. And then there's the promoter that is the producer. If at all, because this is kind of, as you indicated, a definition that comes later on. And it's generally when we're looking to deference, Chevron, Skidmore, et cetera, there's a little more formality to the process in terms of how any definition or articulation or interpretation is developed over time. Absolutely, Your Honor. And I think that part of this is the product of it being sort of a rush process. So the agency did not go through notice and comment rulemaking with respect to the different definitions. And in fact, as we pointed out in our brief, I think if you look at page 735, they adopted a definition of performing arts organization operator that seems to us to conflict with the statutory language. But putting that aside, we don't think they get any deference on the statutory construction issue here. This is a question of law for the court to decide what is the definition of producer. That's how the district court treated it. Well, I think below they asked for Skidmore deference on that question. I think they've abandoned that on appeal by failing to raise it, asked for it. So I don't think they get any deference on that. With respect to the record, it's substantial evidence review. And the place that you were, just as a matter of information, helpfully describing the role of the sound engineer, citations in the record that would pin down the concert investors responsibility for music, audio rig, kinds of things. And I pulled out some sites, but I actually would be guided by sites that you think are the best sites to establish that. Right. Well, I can give you a few different ones, Your Honor. I think the, let's see, we're just actually looking at this. The sound engineer is called Sound Solution. One of the sound engineers, that's on page 677 of the record. Stage manager, that's separate from sound, that's 678. I pulled a couple other invoices too. For example, VER, we paid them for audio package. That's at 647. We paid someone called PRG Music for audio equipment. That's at, I'm sorry, that's at 647. The VER was at 643. And then we paid Sound Solutions. That's also in the record elsewhere at 560. So those are just some examples. I think the SBA also found that we were at least a service provider for lighting and sound. Actually, to be clear, I think they said at most, but either way, I think it's common ground that we do at least, for appeal, we do lighting and sound. But I want to go back, Judge Pillard, to your question about what else in the record, because we've talked about the magazine articles. I do think they're quite compelling. And again, I'd urge you to look at that hyperlink and go to page 41, because it says right there in black and white, or actually in full color, that we are a full service, we advertise ourselves as a full service production company. And that's way before this grant eligibility requirement. But I would also suggest there's a bunch of other stuff, too, that just was not considered by SBA. I think that's really critical. For example, the contract between the Live Nation, which is the promoter, 21 Pilots, the band, and my client, that describes us as providing production services for the concert. Of course, there's the contract between Concert Investor and the band, 21 Pilots, which explicitly refers to us. It defines us as a producer. And again, there are no other producers. Oh, sure, sure. The 21 Pilots contract is at JAA 611 through 626. And if you go to 611, it's right there in black and white. It says Concert Investor, parentheses, capital P, Producer. And it's with the band itself. And again, that's what the band hired Concert Investor to do. And what is your response to SBA's position that you weren't responsible for the music? Well, I mean, it's true we're not responsible in the sense that, again, we didn't run the sound board during the show. We didn't write the music. We didn't write the songs for the band. But we were paying all, we were managing the entire tour budget, and we were paying all the vendors who were doing sound things. So even if we didn't have creative control over certain aspects of the show, which ultimately is within the purview of the artist in a show like this, they can decide when they hire a producer to produce their show, they can decide, we want you to do most aspects, but we have the sound covered. Or we want you to do, we want you to do this, but we already hired Live Nation to do our marketing, to do our promoting, and to sell the tickets. So we don't need you to do that. But we do actually want you to play a creative role in designing our show. And that's what happened here. So what's your ultimate remedy here? Because you're not agreeing with the definition of producer to do all aspects of the production. And so if we were to reverse, that's the definition that's still there. So are you asking us to define what produce is? Well, again, you're right. It's not a situation where you have to defer to the agency. So I think you can and should adopt a definition that makes sense based on the statutory terms. Again, we have some statutory clues that suggest it requires, it's a broad definition, a flexible one, but it includes some organizational managerial production role, which again, describes what my client does. So I think you can and should adopt that definition. And once you've determined that that definition is the correct one, and you can reverse the summary judgment ruling and hold that the denial of funding was improper because it was, we met all the eligibility requirements, including the live performing arts operator organization eligibility. So in the document's definition though, because you're asking us to kind of come up with it based on industry usage, perhaps dictionary terms, but with the definition then ensure that, as I spoke about earlier, these other activities, advantage, post, et cetera, would have been individually sufficient to meet the criteria so that that comma matters. That's absolutely right, Your Honor. We agree that it matters. There's an or there. I think anybody doing any single one of those functions. And to be clear, we think we also manage tours and we organize tours. We might even post tours depending on how SBA wants to define that term. We don't know. So if that's the case, then could you have just met the definition another way without us defining produce? Yes, Your Honor. I think you could say that. I think one way to this is to say under any reasonable conception of what those broad terms mean, concert investor meets it, or at a minimum, the agency was wrong to deny a concert investors funding. And obviously in that situation, sometimes the case will be remanded back to the agency. Don't think that that is the best course here, at least not a remand without explicit instructions to say, essentially, that this is the sort of entity that Congress had in mind when it was trying to relieve funding. Just because the history of the case, I think it's been two and a half years since my client applied for this funding. In those two and a half years, the company has essentially gone defunct as its direct competitors who were awarded funding based on very similar and seemingly ad hoc distinction. I mean, similar responsibilities and yet ad hoc distinctions among them have been able to actually bid on those major international tours, those multi-continent tours that my client used to produce shows for and no longer can because of the SBA's mistake. So we would urge that rather than setting it back to the agency and having potentially more delay and more errors, at least if there's a remand, it's with clear instructions about what the agency should be focused on, if not just simply an outright, under any reasonable conception, my client title. And SBA did have a statement going back to whether or not you were responsible for the music. And so do you think that their statement is broad in the record? And I think I'm thinking about JA site 807 that essentially says it's not even responsible for its music, not responsible for the audio or the instruments. Is your response just that we were, it doesn't mean that we individually did it, but we had the subcontracts. We were responsible based on our sworn statement to the SBA based on the other evidence in the record. We were responsible for each and every element of the tour. Obviously, that doesn't mean literally everything. Again, we didn't do marketing. That was Live Nation's job, but we were responsible for all of the production services that the band needed. That's in fact, why the band hired us to perform those functions. We are the eligible entity that was paying all of the service providers who were putting on the show. The ones who were running the sound, who were installing the rigging, who were hanging speakers. And again, I think my client actually has a broader role than some producers in the sense that they were also very intimately involved in the creative aspects of the show. That's not always true of a producer. A producer can just be at a remove. This, it was a hands-on producer, started 14 months before the international tour started, that worked very closely with bands to develop not only just the overall budget, but also all of the creative lighting cues, the special effects. It made it like the spectacular show that it was. So I don't think, I mean, I think there could be situations where a band doesn't do that, only does the technical stuff and still be considered a producer. It shouldn't be held against my client that it also happened to play this very pivotal creative role in the show, in addition to the managing the overall tour budget and kind of planning. And instruments were the band's responsibility? I don't know. I'm guessing the answer is yes. I will see if my colleagues know the answer to that. But again, to be clear, our position is not that we were in ultimate control of all aspects of the show, read literally, just because we think that's nonsensical would be impossible. So there might be small things like, did we pay for the instruments? No, that's the band took care of that. You can imagine a scenario where the band would say, we really need someone to manage this budget for this massive tour. But we have, you know, I love to do lighting cues. I'm gonna do that myself. To me, that wouldn't mean that you're a producer. It just means that it's more custom to the tour, to the band, to the nature of the absolutely custom is a great word. We use flexible below, but it's flexible. It's going to depend on the show. That doesn't mean there's no limit in anybody who just does anything for the band. You know, the roadie doesn't qualify as producer, but kind of read sensibly. I'll make one quick point, which is that we've been focusing on the word producer. But again, the question is whether one of our principal activities is to produce, manage or organize. And if one of those things doesn't matter, if you're the capital P producer, like in the musical, the producers, it matters whether one of your principal activities is to do that on the level that Congress had in mind, authorize this $15 billion in funding. So I'm happy to answer any other questions, or I'm happy to pause. Awesome. Thank you. Mr. Silverman, I see when you're ready. Good morning, your honors. May it please the court, Bradley Silverman for SBA and the SBA. I'm here on behalf of the SBA, and I'm here to ask you a question about whether or not concert investor does not produce concerts due to the limited nature of the services that it provides. Now, as a threshold matter, concert investor has forfeited the argument that the government's definition is wrong by failing to raise it below at most during the summary judgment. When you say failing for granted, are you talking about articulating a specific argument about it, is the record sufficient in itself? Because there was certainly a discussion about what it does and the term produce. The two things, concert investor never disputed that the government's definition of produces concerts was wrong. It raised other arguments and argued that it satisfied that definition, but it never argued that that definition was wrong. What government definition? The ultimate control or responsibility for all aspects. All aspects of production is counsel's definition. I'll tell you my concern here. That is counsel's definition. That is not the agency's definition. I do not understand as I prepared this case, and if you can help me, I'll be grateful. I do not understand what legal standard you think the agency was applying. And don't just say production, because that doesn't tell me anything. I counsel tried to cover the agency below by saying all aspects of production. That is not the agency's definition. The agency did not send them a letter that endorsed that position. They've never endorsed that position. And as I went through this and looked at the other cases and looked at this case, I have no idea what the legal standard is that is being applied. And normally I go back to my long roots here, the administrative cases, you're applying, we look to see what the legal standard was, and then whether it was faithfully applied. There is no legal standards been stated here. None. Three points in response to that, Your Honor. First of all, this is the definition that SBA applied. And what SBA did not do was fully flesh it out, spell it out. And you agree they never said, and certainly not in the letter to these people, all aspects of production is what we're applying. That's not the agency's view. Okay. Correct, Your Honor. Okay, good. What's your second point? Well, on that point, they didn't need to say that. It was enough that they imply the standard and that is discernible that that is standard they applied. What they said was that concert investor does not produce concerts. And the reason they gave for that was the limited nature of its role. Let me tell you, let me tell you, as a judge looking at this, what I saw was you on their behalf are telling me some things that they don't do or do. But you're not telling me what it is they should have done. You're telling me what they don't do. And whether it's right or wrong, they contest it. I continue reading the sentences and the paragraphs to try and figure out, okay, maybe they do that. But is that inconsistent with the legal standard that's been stated somewhere? There is no legal standard. There is no legal standard that amplifies the statutory provision. And it shouldn't be our job on review to now figure out what production or whatever word between the two of you think is appropriate, we're supposed to give meaning to it. And we and there's an expert agency that should have done it. Three points, Your Honor. Very quickly on the first one, I'll move on to the second and third point very quickly to say what producing a concert is not naturally implies what producing a concert is. So providing limited services, limited aspects of the show is not enough to produce a concert. And it follows that producing a concert requires more than just a limited role. It implies all aspects of production. That's right. Why does it imply that? Even if... You're saying what they did intuitively to you seem too limited. And so you self-servingly say, so the standard must be they have to meet an all aspects of production standard. Says who? The agency never said that. The statute doesn't say that. They say production. It doesn't follow that because the word production is there, that means you must attend to all aspects of production in order to be within the statutory category. Where does it say that? Two more points, Your Honor. Even if it doesn't... You're up to number seven now. Sorry? You're up to number seven point... About seven, seven and a half, somewhere there. Even if SBA did not say that, and even if SBA should have said that, any error in failing to say that was harmless because this is the definition. This is the correct answer. This is what SBA... How do I know that's the correct answer? Because we've explained it in our brief. Because you said it in your brief? This is a legal question, Your Honor. But I believe... Sorry? SBA reversed the statute with respect to application funds. SBA has made three mistakes in granting funds, but as evidence that this is the standard applies, it acknowledged that these were mistakes, that it should not have done that, and has moved to recoup those funds. If SBA was applying no standard here, then it wouldn't say that it made a mistake. It wouldn't try to recover those funds. Only if SBA has a consistent definition, and it actually applies across the board, can you even say, we made a mistake in giving you these funds in the first place. You're saying a consistent definition. At what time did this definition... Was it derived? I can't point to a particular moment. I cannot point to a particular moment. What I can say is that SBA was reviewing tens of thousands of applications. In the course of doing this, it formulates an understanding of what this term means, and what satisfies it, and what doesn't. But even if SBA did not say this, and Chenery requires it to have said so, it would do the same thing on remand, any error would be harmless, because this is a pure question of... I guarantee you, if it went back on remand, and we said we need to understand what it is you think the statute means, give us a standard, they would not do the same thing. I'm not talking about the result. I'm talking about explaining what it is they think they're applying. And then we would know whether or not their application is fragile. They would be saying this, Your Honor. But you don't even need to take my word for that, because this is a pure question of statutory interpretation. That is one the courts are well-equipped to answer. What does the term produces concert means? We did not ask for Chevron deference on that question. We argued this is what the term means. I don't know where we're going to go with Chevron. I don't know where we're going to end up with Chevron. That's not the issue. But there's no way I can imagine that this court, and its administrative law, is ever going to reach a point where we have challenges to agencies' interpretation and applications of statutes, where we ignore what the agency said. Because we have to understand how the agency got to the result that it did. So we have to understand what it is the agency thought it was applying. And if the agency doesn't cite a legal standard, then we're not in a position to be able to judge. That's not going to change. That's not about Chevron or anything else. That's the way we have to do business. We have to know what legal standard the agency thought it was applying. That's what's fair to the parties. Parties are entitled to know that. And then they set their cases up accordingly and answer your challenges. You never did it here. And you said you can't cite to anything, because it's not there. And I've looked. Your Honor, the question of what it means to produce concerts is a pure question of law. Whether or not a particular applicant satisfies that standard, that's a mixed question. Whether or not... Let's go with my comments again. OK. Organize, promote, produce, manage, or host. So aren't those individual buckets that would essentially individually be sufficient enough to meet the various categories for creating an application? Yes. Then how do you distinguish the commas, those words between the commas? Oh, I agree that the commas matter, Your Honor. The fact that there are five different words, you have produces alongside words like organizes, manages. But produce can include promote, right? It includes it. Produce can include manage. Broader, it includes. OK, but the point is that if any of these individually could meet it, then why is producing all of a sudden all aspects of? Well, because concert investor only applied on the ground that it produces concerts. If you look at their justification statement, they say they only produce concerts. That's the rationale they offer. In fact, concert investor emphasizes the opinion of its accountant. Concert investor places great emphasis on the accountant's words. The accountant says in concert investor submission of its application, concert investor's sole business is producing concerts, not managing, not organizing, produces. So at the agency level, the only question put before the agency was whether concert investor produces concerts. If you find that in the paperwork submitted and then, you know, just looking at various articles, just anything that just kind of supports the application, that some of it was actually managing. Do they then get to, despite that they applied under producing, because they've articulated another individual category for which they could have qualified? SBA had no obligation to make arguments on concert. Let them stand or fail on their own application. Yes, your honor. OK, so I'm going to use it. So the determination was they were a contractor solely for light and sound, not a producer. That's correct. And so reading the record, there's evidence that the SBA doesn't address about being involved in developing creative elements, about retaining equipment needed, including rigging, custom set pieces, special effects, invoicing for power services, submitting an overall custom budget, overseeing set construction, negotiating with vendors, tour staff. How do we account for what looks like on one reading a much broader set of functions than what the SBA is accrediting? I would say that your honor has just enumerated all the different various aspects of producing the visual elements of a concert. You can describe it succinctly as the visual elements or you can describe it in visual and sound elements. The sound role, if any, of Concert Investor is murky and unclear. Counsel, in his turn up here, said that Concert Investor is responsible for the music or at least indirectly responsible for the musical aspects of the show. But that is not in the record. There's the Lighting and Sound America article describes what Concert Investor does. It describes them producing visual effects of a show. And then it describes a completely different person, Sound Engineer, who actually is responsible for bringing the music, which is the most important part of a show, to the audience's ears. And there's no apparent connection between that person and Concert Investor. Now Concert Investor argues that, well, actually, we pay that person responsible. But that's not in the record. At best, you have these cryptic and, frankly, impenetrable invoices. I'm probably looking at the wrong document here. But JA-108, the letter from the SBA, said that Concert Investor at best serves the needs of touring concert artists for lighting and sound, designing plots, obtaining subcontractors to install and operate the necessary equipment during a concert. And that's no longer the view of the record that you're operating on, because that's before the appeal. I think the way to understand the term lighting and sound in the denial letter is if you look at the FAQs, SBA treats lighting and sound service providers as sort of a bucket category, a general category. So in using the same general term, that is meant just to refer to the general category used in the FAQs, not to say specifically you do lighting and sound. And the designing plots, obtaining subcontractors, and necessary equipment, you see that all as in service of the lighting role. Yes, that is correct, Your Honor. These are all different components of lighting, visual effects, to put it more charitably, because they do more than just strobe lights. There's a lot of visuals. It's an impressive set, and no one disputes that. But it's only the visual component. Possibly, possibly, and I say possibly because the record is just not clear on this point, some sort of ancillary sound-related function, such as perhaps syncing visuals with music or some sort of sound, special sound effects that go along with it. And I have to speculate about that because there's nothing in the record that says what they do, certainly nothing that suggests that they are responsible for the sound engineer, the person at the audio board, actually is responsible for enabling the audience to hear the music, which is the most important part of a concert. Now, does your definition of produce require that they originate the idea of the concert and actually approach musicians about performing it? No, Your Honor. Because I'm just trying to figure out when you say all aspects, what is the entering point into that definition? Ultimately, do they have control, responsibility, whether directly in what they do or in who they supervise and who they can oversee and countermand for everything that goes into a concert? It's fine for a band or artist to come to them and say, we want you to produce our concert. That has to start from somewhere. But there can't be broad aspects of the show that they're not responsible. In addition to the music, which nothing in the record suggests they're responsible for, there's no evidence in the record. And in fact, I believe it's undisputed that they do not schedule tour dates. They do not book venues. They do not, you know. They're clear that that's Live Nation. Live Nation is the promoter and they do the venues and they do the dates. And so the, and I recognize that in the, I guess it was the district court oral argument, the SBA had said, this was you, said, you know, the producer might've been Live Nation or the producer might've been the band or I guess the producer is just someone else that we don't, haven't heard about. That's right. Because it seems to me not persuasive. If we think that it's clearly not Live Nation, it's clearly not the band. And so is the position that there is potentially some other entity? Potentially. I would say it could be the band. One thing that's important to note about the record here is there is no reason to believe that the record submitted to SBA necessarily would reveal who the producer is. I appreciate that. Yeah. This is a record that they submitted in support of their application. It's possible. And again, I'm speculating because the record supports nothing more that it is the band ultimately responsible for that. Sometimes a band will have a production company, either that they hire from someone else or that it's their own company. Taylor Swift, for example, has, I forget the name of it, her own production company that does everything for her shows. So it's not her exactly, but it's a company that the band creates and controls. So that could be the case here. It seems, I mean, we've got a lot of information. I appreciate that the information is compiled for purposes of this application, but it seems peculiar that there would be no mention, particularly in industry articles. And I know those are articles. They're not sworn declarations, but it would be odd if there was no mention to an actual producer. Not necessarily, Your Honor. These are materials that this company compiled and submitted and selected, possibly cherry-picked for the purpose of trying to persuade a government entity that it should receive several million dollars in free cash. It is not surprising that they might be able to find the best evidence that shows that they perform a large role. That doesn't necessarily mean that they actually are responsible for everything. And the kinds of things that you would ordinarily see that would give you much more confidence that aren't in this application would be more detailed declarations, would be kinds of things. I don't think the problem is a lack of detail. The problem is the function that they play, the roles that they serve. But I'm wondering if there is a way that, I appreciate that this was a lot of processing of a lot of the people's money during a short amount of time. And so I'm sure that the people at the SBA had things that gave them more confidence and less. And maybe that's not something that you can speak to. But I'm curious about what makes, and we're only seeing this one, but what makes this look unconvincing to the administration? The narrowness of the roles, the functions they play on the tour, not doing the music, not booking the venues, not scheduling tour dates, not having responsibility for security for any number of different things. It's the, if concert investor articulated what it does in more detail, I'm not sure that would help. Maybe if it's true, and I say if, because the record doesn't support that, if they actually were responsible for the musical aspect of a show, then possibly that could be important. Maybe not because they still don't seem to actually schedule the venues or book the, schedule the tour dates or book venues. But that is one glaring omission. But Live Nation does that, and I gather Live Nation does that for a lot of acts. Well, what I would say is if there is a whole separate entity that is doing that, that sort of suggests that the other entity, concert investor, is not responsible. So whatever entity is both retaining Live Nation and concert investor, because presumably they're not just coming in here scheduling concerts that, you know, band has not decided to throw yet. Someone is coming and saying, we are retaining you, Live Nation, and we are retaining you, concert investor. To that end, let's assume that concert investor doesn't host, promote, manage, or organize. Then what is your definition of produce? I'm sorry, Your Honor? Let's assume that concert investor does not host, manage, promote, or organize. Then how do we get to the definition of produce? I would say it's the same definition that we described, ultimate control over all aspects. And if they have no- But when you say all aspects, those terms are some aspects. Okay, let me clarify then. Concert investor does not need to personally perform any of those. But it has to be, I guess, for lack of a better way of putting it, final decision. Someone else can do these things. You can delegate tasks. You can oversee tasks. But at the end of the day, someone makes the big calls as to what happens in a concert. Is concert investor making these calls or someone else making these calls? So producer, in that string of definitions, in your view, producer is above manage, organize, host. I would believe so with the caveat that because concert investor never raised the manage or organizations arguments at the agency level or the district court. Well, they raised it, but then they abandoned it in the reply brief when the government argued they produced concerts and they never said, well, we also manage concerts and organize- I think the point is not that they manage, it's that there are other important actors and you could still be a producer and not be responsible for all aspects. Because in fact, this is defined in contradistinction in a list to some other important roles. So the notion that you would be responsible for playing the guitar or for booking, for something that is actually host or managed is by in the statutory definition itself is rebutted. I don't think that's correct, Your Honor. I think that- But the manager could hire the producer. I'm sorry? The manager could hire the producer. Maybe, maybe the managers will the producer because concert- All of your answers are maybe. I mean, that's the thing that's driving me crazy in listening to this. The lack of legal standards. Your first answer to the question that my colleague raised was, you know, what would they have had to put in? You said, well, maybe if they put X in and then you said, well, I don't know, maybe not. But maybe if they put Y in, that's not a standard. And it's you, it's not even the agency doing it. My view is that's what the agency sits and thinks through and makes the decision. You're sitting before a court of appeals and say, well, I don't know, maybe it could be a good case for them if they use A and B. And then my colleagues are pointing out that there are several terms here. You're not sure you're thinking intelligently. Well, wait, how should I square that for the court so it sounds reasonable? Makes no sense to me. It's not a legal standard. You're just guessing. And you admitted it by saying, I don't know. That's not a legal standard. Your Honor, just one more point on this. And we discussed this earlier. The Chenery Doctrine, under which an agency needs to, you can only defend its reasoning that it articulated at the outset. That does not apply to questions of law. That does not apply to questions of- Counsel, let me tell you, there are more cases that I could begin to count to tell you to support what I'm saying. That is, we need a legal standard that we understand that is reasonable, permissible with law and enforceable. It gotta be comprehensible. Otherwise, the parties who are regulated have nothing to guide them. That's what we look at over and over again. And I know you know that. Your Honor, I would say that the meaning of produces concerts is sufficiently clear as a matter of ordinary use, as a matter of what that term is. I'm good to meet at the age in the concert industry that it doesn't need to be spelled out. It goes without saying. When we're in law school, we learn how to perform legal analysis, issue, rule, analysis, conclusion. That's the way we're used to writing. But an agency doesn't need to do that. Certainly not when it is writing thousands of decision letters or making thousands of decisions. It is enough. Even if it doesn't spell out the R aspect of IRAC, it's analysis is clear. What they normally do is to say we have this statute to enforce and it has this requirement in this section and what we, the agency, think that means. And this is what we're going to apply in all the cases that are going to start pouring in is this standard. And they never did that. First person who did it was you. Your Honor, they addressed the statutory standard by performing arts organization. They looked at produces and they said, this is why a concert investor doesn't produce concerts. Of course, they could have said more. An agency always can say more, but that is what they did. Thank you. Thank you, Your Honor. A few quick points. I think it's pretty clear that under the government's definition, there would be no producer for this concert given the acknowledged role of the band and of Live Nation. But they admitted below that page JA805, they admitted below that every concert has at least one producer. But clearly here, all these different entities are each taking, having ultimate control over different aspects of the show. That makes no sense. The band hired concert producer or concert investor to be the producer. And if you look at the agency's own definition of what a promoter does, it's things like on JA735, it's renting the performance site, marketing, collecting gate receipts, and then critically contracting with artists or a production company for the performance. The SBA itself contemplated that there would be multiple entities having ultimate control over a concert. That's point number one. Number two, to your point, Judge Edwards, there is a lot of daylight between saying you're a mere service provider having ultimate control over all aspects. I think that by itself shows that this is a post hoc definition. There could be someone with three quarters of control over the concert. That's different from saying you could be not a mere service provider, but have control over most aspects. And that still would not get you to the all aspects definition that they've suggested today. And tellingly, the reason why in district court, they adopted that all aspects definition because they were confronted with the SBA's mistakes in reviewing the record and seeing that in fact, my client does perform that overall supervisory production role. Even if not all aspects literally read. Number three, who is a producer? I think there's been a bunch of questions about whether there might be some other secret producer somewhere. I would point to your, I think there's a lot of evidence of the record, including the magazine articles that we read that, you know, J658 says everyone else was a subcontractor, for example. But I would also point you to the sworn statements of both my client and of our CPA. And those are at, let's see, the CPA, I believe is at 335. I just have this written down. Oh, 355. That's the CPA saying, this is our business. This is the CPA who does the day-to-day work and says, this is what they do. They're in the full service production business, okay? And then my client, JA572 through 575 wrote a detailed statement to the agency explaining exactly what they do. And in that statement, they would have been committing a federal crime by swearing that they did not perform these roles that they said they were performing. So I urge you to look at that too. I think that's relevant. My question is about who is the producer? Is that generally gonna even be a dispute? Like, in other words, for the host, manage, organizer, promoter, is there kind of an agreement about who is the producer versus the manager versus the organizer versus the promoter? I mean, to be honest, I don't really know if things like manager and organizer are defined roles on a tour. I think what Congress was, producer certainly is. Host, I don't know if it's also a defined role. Promoter also is. So Congress kind of blended some common terms like promoter and producer, potentially, with other just verbs, which leads me to believe it was not seeking someone who is the capital P producer, necessarily, but someone who's playing a substantial role in producing the show, including a production. That's how I would answer that question. I guess I have one other, unless you have a question, Your Honor, I'll leave with one final point, which is that, you know, at the end of the day, I think at a bare minimum, there's any questions about what the record shows. It should go back to the agency just because to the extent or we would have been able to put in more evidence had we known what the standard was going to be. Unfortunately, we were unable to do that. And I do have sympathy for the rush process that SBA went through. Obviously, they had tons of applications to go through. It was a crazy time. We all remember it. But the question here today is not whether they did a good enough job. And yeah, they made some mistakes. It's whether or not satisfy the definition. So if they made a mistake before, it should be fixed now. They made a mistake. The question is what to do about it. We think the answer is clear or it should hold that under any reasonable conception of what a live performing arts organization operator is, my client satisfies that definition. Thank you very much. Thank you. The case is submitted.
judges: Pillard, Childs, Edwards